GEORGE WARNER and CALEB WARFIELD, and others, Garnishees *vs.* FREDERICK RICE and JOHN HENRY KNELL, JR., Trustees of FREDERICK LEWIS, use of FINDLAY, GLUCK, and BALDWIN, in part.

*Restraint upon Alienation—Construction of Declaration of Trust—Immediate family—Attempt to Exempt property from Liability for Debts, held Void.*

A beneficial legal estate, in fee or for life, cannot be conveyed or devised to a person with a provision that it shall not be alienated, or that it shall not be subject to the debts of the legal owner.

As a general principle it is equally true that equitable estates cannot be effectually created with a proviso against alienation, or that they shall not be liable to the debts of the *cestui que trust,* except in the case of trusts created for the protection and benefit of married women.

It is wholly against the policy of the law to allow property, whether legal or equitable, to be fettered by restraints upon alienation; and generally, whenever property is subject to alienation by the owner, it is subject to his debts.

G. W. conveyed his property to a trustee upon the following trusts: "In trust for the use and benefit of said G. W. and his immediate family, free from liability for any of his debts, contracts or engagements; and when, if so by said trustee found requisite, by him deemed proper, to apply the issues, rents, income and profits to the support and maintenance of said G. and of his said family, during his, said G's life, and after his decease the same to go as he by last will, may have directed; or in case of his decease intestate, the same to go according to law, under the existing statutory provisions of the law of Maryland." Upon attachment proceedings brought by creditors of G. W. to affect the rents of the property conveyed by the deed of trust, it was HELD:

1st. That even if the rents and profits of the trust property were not paid over to G. W. during his life, for the support of himself and

Warner, *et al. vs.* Rice and Knell, Trustees, &c.

family, the trustee would have no power to retain them as his own property, nor was he directed or authorized to accumulate them for any other purpose; and at the death of G. W. they would go to his executor or administrator.

2nd. That the discretion given the trustee, if the direction could be construed into a power to exercise a discretion at all, could only apply to the manner of the application, and not to any power to withhold or divert the rents and profits, and apply them to any other purpose.

3rd. That the term "family" as used in the declaration of trust was of doubtful import, and would be rather difficult to define with precision and thereby determine who should be considered as rightfully embraced in it. The terms "immediate family" employed, would seem to indicate that they were intended to apply to the household of G. W., or those bearing the relation to him of dependents for support. But there was no such separate independent and defined interest in the family as to enable its members, whoever they might be, to enforce the trust in their favor.

4th. That the exemption attempted to be conferred upon the use of the property by the declaration that the same should be free from liability for any of the debts, contracts or engagements of the author and beneficiary of the trust, was simply void and without effect, as being contrary to law; and as G. W. had an equitable interest in the ground rents attached, those rents were liable to judgment of condemnation.

APPEAL from the Superior Court of Baltimore City.

Frederick Rice and John Henry Knell, Jr., trustees of Frederick Lewis, obtained a judgment by default against George Warner in the Circuit Court for Baltimore County. The judgment was extended by the Court for the plaintiff for $2162.40. An attachment was issued on said judgment, directed to the sheriff of Baltimore City, and laid in the hands of Caleb Warfield and others as garnishees of George Warner. The interest attached consisted of reversions or ground rents devised by the will of the defendant's father and allotted to the defendant in the division of the estate. The garnishees moved to quash the attachment upon the ground that the defendant had no

attachable interest in the property attached. The Court overruled the motion to quash and entered a judgment of condemnation absolute against the property attached for $2461.48, with interest and costs. The case is further stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, ROBINSON, and BRYAN, J.

*Benjamin E. P. Crampton,* and *Edwin Higgins,* for the appellants.

*Robert Baldwin,* for the appellees.

ALVEY, C. J., delivered the opinion of the Court.

This case presents the question, whether the interest or estate of George Warner, the debtor, in certain property embraced in a deed of trust made by himself and wife, and others, to Joseph A. Sprigg, is liable to attachment or execution for his debts. The deed bears date the 18th of Sept., 1877, and the judgment upon which the attachment issued was rendered several years after the deed was made and recorded.

It appears that the late George Warner, Jr., who died in 1877, willed his property to trustees to be divided by them among his three children in certain proportions; and after the division, those children joined in the deed of trust to Sprigg, just mentioned, in which certain trusts are declared by the grantors. The property conveyed was both real and personal. The will and deed of trust were both before this Court for construction, in the case of *Warner vs. Sprigg,* 62 *Md.,* 14. It was there held, that, under the will, the children took an absolute legal estate in the property devised and bequeathed; and that the deed of trust was valid, and vested in the trustee the legal estate in the property conveyed, subject to the trusts declared.

Warner, *et al. vs.* Rice and Knell, Trustees, &c.

The declaration of trust in the deed, in relation to the property of George Warner conveyed, or that portion of it sought to be made liable to the attachment in this case, is made in these terms:   "In trust for the use and benefit of said George Warner and his immediate family, *free from liability for any of his debts, contracts or engagements;* and when, if so by said trustee found requisite, by him deemed proper, to apply the uses, rents, income and profits to the support and maintenance of said George and his said family, during his, said George's life; and after his decease the same to go as he by last will may have directed; or in case of his decease intestate, the same to go according to law, under the existing statutory provisions of the law of Maryland."   And in the concluding part of the deed, there is a general declaration of intention, made by all the parties thereto, in the following terms:   "It being the intent of all said grantors, parties hereto, to convey and assign to said Sprigg, to be held by him and those who may succeed him in said trust relation, in trust, for said grantors respectively, as to their several estate and interest, the legal title, they respectively controlling the investments, and changes of investments, from time to time, and in the manner hereinbefore specified.  *  *  *  The said *cestuis que trust* respectively being entitled and reserving the right to collect, receive and have, each for her or himself, the rents, issues and profits of her or his respective share, conformably with the trust hereby created."

George Warner has a wife, who joined with him in the deed of trust, and the record shows that he has two infant children; but whether he has other children or not, the record does not inform us.   All the garnishees, in whose hands the attachment was laid, except the trustee, appear to be lease-holders, and it is the annual ground rents payable by them, that are sought to be applied, by means of the attachment, to the satisfaction of the judgment against George Warner.

It is certainly a well settled doctrine in the law of property, that a beneficial legal estate in fee or for life, cannot be conveyed or devised to a person with a provision that it shall not be alienated, or that it shall not be subject to the debts of the legal owner. And, as a general principle, it is equally true, that equitable estates cannot be effectually created with a proviso against alienation or that they shall not be liable to the debts of the *cestui que trust*, except in the case of trusts created for the protection and benefit of married women. It is wholly against the policy of the law to allow property, whether legal or equitable, to be fettered by restraints upon alienation, and generally whenever property is subject to alienation by the owner it is subject to his debts.

But though such be the general rule upon the subject, property may be so devised or conveyed for the special benefit of a party that it cannot be alienated by him, and creditors and assignees in bankruptcy cannot seize and appropriate it to the payment of debts. As, for instance, a devise of the income of property, to cease on the insolvency or bankruptcy of the devisee, is good, and such limitation is effectual. *Brandon vs. Robinson*, 18 *Ves.*, 429; *Rockford vs. Hackmen*, 9 *Hare*, 475; *Nichols, Assignee vs. Eaton*, 91 *U. S.*, 722. But such principle has no application to the case before us.

Here, George Warner was legal as well as equitable owner of his share of the estate of his father, which was conveyed by the deed of trust; and he is himself the author of the trust created in his own favor under which he is now seeking to shield himself against his creditors. The object of the deed of trust was not to destroy or divest himself of his right of property, but simply to place the legal estate therein in a trustee as, perhaps, a guard against improvident management. But the equitable estate remains in George Warner during his life, with full power of disposition by will, and, in default of will,

Warner, *et al. vs.* Rice and Knell, Trustees, &c.

the property devolves on his heirs and representatives at his death, when the trust will terminate. It is only during his life that the rents, profits and income from the property are directed to be applied to the support of himself and his family, when and as the trustee may deem proper. Full and complete control is retained in the *cestuis que trust* over the investments, and change of investments; and they declare, moreover, that they are entitled, and reserve the right, to collect, receive and have, each for her or himself, the rents, issues and profits of his or her share, conformably with the trust declared. As we have seen, there is no limitation over or cesser of George Warner's equitable life estate, or his interest in the rents and profits of the property, upon seizure of the same by creditors; nor is there any other direction in regard to the rents, issues and profits of the property, than that they are to be applied to the maintenance of George Warner and his family during his life.

It is urged that there is a discretion in the trustee as to whether he will or not pay over the rents and profits to George Warner for the support of himself and family. But if he does not so apply the rents and profits, what will he do with them? It is very clear the trustee will have no power to retain them as his own property, nor is he directed or authorised to accumulate them for any other purpose. Suppose, at the death of George Warner, the trustee should be in arrear with the rents and profits, to whom would they belong, and to whom would the trustee be required to account? It would seem to be very clear that, in such event, the rents and profits would belong to the estate of George Warner, and that the trustee would have to account to his executor or administrator for such arrearage. The trustee, clearly, has no power, by the exercise of any discretion, to divert the rents and profits from the estate, or from the purpose designated by the deed. The discretion given the trustee, if the terms of

Warner, *et al. vs.* Rice and Knell, Trustees, &c.

the direction can be construed into a power to exercise a discretion at all, can only apply to the manner of the application, and not to any power to withhold or divert the rents and profits, and apply them to any other purpose. Upon this question, the cases of *Green vs. Spicer,* Russ. & M. 395, *and Snowden vs. Dales,* 6 *Sim.,* 524, are strong, and indeed conclusive, to show that the discretion of the trustee, in such a case as this, only relates to the manner of applying the rents and profits to the purpose designated. See also the case of *Piercy vs. Roberts,* 1 *M. & K.,* 4.

The trust declared, for support and maintenance, embraces the "immediate family" of George Warner. But the term "family," as used in this declaration of trust, is of doubtful import, and would be rather difficult to define with precision, and thereby determine who should be considered as rightfully embraced in it. The terms, "immediate family," employed, would seem to indicate that they were intended to apply to the household of George Warner, or those bearing the relation to him of dependents for support. However, it is clear, there is no such separate, independent and defined interest in the family, as to enable its members, whoever they may be, to enforce the trust in their favor. *Tolson vs. Tolson,* 10 *G. & J.,* 159; *Neo vs. Neo, L. R.,* 6 *P. C. C.,* 381, 395; *Lambe vs. Eames, L. R.,* 10 *Eq.,* 267, affirmed on appeal in *L. R.,* 6 *Ch. App.,* 597.

In the argument at the bar, we were referred to no case, and we have not been able to find any, that supports the contention of the appellants. The case mainly relied on is that of *Nichols, Assignee, vs. Eaton,* 91 *U. S.,* 716. But that case does not, nor does any case therein referred to, embrace a case like the present. In that case, the mother of the bankrupt had bequeathed to him by will the income of a fund, with a condition in the trust that on his bankruptcy or insolvency the legacy should *cease,* and

go to his wife or children, if he had any, and if not, it should lapse into the general fund of the testatrix's estate, and be subject to other dispositions. The assignee of the bankrupt sued to recover the interest bequeathed to the bankrupt, on the ground that this condition was void as against public policy. But the Supreme Court, in an opinion delivered by Mr. Justice MILLER, upon full review of the authorities, both English and American, held that the objection was not well taken ; that the owner of property might make such a condition in the transfer of that which was his own ; and in doing so violated no creditor's rights and no principle of public policy.

With the decision of that case as presented to the Court, we make no question whatever; and do not hesitate to say, that, if this case were fairly embraced in the principle there decided, we should regard that decision as an authority of controlling influence. The Pennsylvania cases, and the other cases referred to in the case of *Nichols vs. Eaton,* are certainly very strong in support of the principle there maintained ; but none of them go the length of deciding against the rights of creditors in a case like the present.

This Court is therefore of opinion, that the exemption attempted to be conferred upon the use of the property, by the declaration that the same shall be free from liability for any of the debts, contracts, or engagements of the author and beneficiary of the trust, is simply void and without effect, as being contrary to law ; and that as George Warner has an equitable estate in the ground rents attached, those rents are liable to judgment of condemnation. We must therefore affirm the judgment of the Court below.

*Judgment affirmed.*