In re Peter W. KWAAK, Frances L. Kwaak, Debtors.

Dennis G. BEZANSON, Esquire, Plaintiff,

v.

MAINE NATIONAL BANK, Maine Aviation Corporation, Peter William Kwaak, Frances Louise Kwaak, Defendants.

Bankruptcy No. 283–00186.
Adv. No. 283–0308.

United States Bankruptcy Court, D. Maine.

Sept. 24, 1984.

**600**

Dennis G. Bezanson, South Portland, Me., pro se.

Robert Checkoway, Portland, Me., for defendants Maine National and Maine Aviation.

Judith Clancy, Portland, Me., for defendants William and Louise Kwaak.

## MEMORANDUM DECISION

FREDERICK A. JOHNSON, Bankruptcy Judge.

The trustee seeks a determination that the debtors' interest in an employer-financed stock bonus and profit-sharing retirement trust is non-exemptible property of the estate. The debtors, the employer, and the bank which administers the funds all oppose the relief sought by the trustee. After a careful review of the trust, the statutes, and the relevant case law, the court concludes that the debtors' interest in the plan is not property of the estate.

In their chapter 7 petition, filed July 11, 1983, the debtors, Peter and Frances Kwaak, claim an exemption in a retirement plan held at Maine National Bank. The plan, entitled "Employees' Stock Bonus and Profit-Sharing Plan and Trust," is a benefit provided to the thirty-nine year old Peter Kwaak by his employer, Maine Aviation Corporation. The trustee filed an objection to the exemption claimed by the debtors and filed a complaint for turnover of the debtors' interest in the retirement plan. The court ordered that the two proceedings be consolidated.

The trust is an ERISA plan qualified under section 401(a) of the Internal Revenue Code, 26 U.S.C.A. § 401(a) (1978 and Supp.1984). Contributions to the trust are made by the employer, either in cash or in shares of company stock, in an amount to be determined by the company at the end of each fiscal year. The employer, because of its own financial problems, has made no contributions to the trust since 1979. The debtors' account shows an interest in 1,633.5 shares of Class B non-voting stock of Maine Aviation Corporation and $3,373 in cash.

Unlike some ERISA plans, the one at issue invites no active participation by the

employee, who has no control over his benefits. All investments have been determined and deposited by Maine Aviation, and there is no incentive plan whereunder employee deposits are met with correlating employer contributions. No withdrawals are permitted, except upon the employee's death, termination, disability, or retirement, or upon the termination of the plan itself. If Mr. Kwaak had left his employment at the time the bankruptcy petition was filed, his eight years of service would have entitled him to a vested interest in 70 percent of the assets in his account. Upon his death, retirement, full disability, or the termination of the plan, eight years of employment would have given him an interest in one hundred percent of the assets reserved for him.

 Section 541 of the Bankruptcy Code reaches broadly to bring most assets of the debtor into the bankruptcy estate. *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Relevant here is subsection (a)(1), which places in the estate "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C.A. § 541(a)(1) (1979). This sweeping provision is intended to obviate the complicated pre-Code determinations of what constitutes estate property. H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 175 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6136. An "interest" in property is, of course, defined by state law. *Turner v. Burton (In re Turner)*, 29 B.R. 628, 630 (Bankr.D.Me.1983); 4 *Collier on Bankruptcy* ¶ 541.02[1] (L. King 15th ed. 1984).

In spite of the breadth of section 541(a), some property is *excluded* from the estate by section 541(b) and (c), and other proper-

ty is brought into the estate and then *exempted* under section 522. The section 541(c)(2) exclusion reads:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C.A. § 541(c)(2) (1979).

Authorities have disagreed about the meaning of this exclusion. Some courts have interpreted the section as broadly as it reads on its face, noting that resort to legislative history is not necessary when a statute's wording is clear. *See, e.g., In re Pruitt*, 30 B.R. 330, 331 (Bankr.D.Colo. 1983); *In re Threewitt*, 24 B.R. 927 (D.Kan.1982). These courts tend to exclude ERISA plans from the estate. Other courts have relied on the section's legislative history, *see* H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 369 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News, 5963, 6325,[1] to conclude that only *traditional* state law spendthrift trusts are referred to by the term "applicable nonbankruptcy law." These courts are likely to include ERISA plans in the estate. *See, e.g., Firestone v. Metropolitan Life Insurance Company (In re DePiazza)*, 29 B.R. 916 (Bankr.N.D.Ill.1983).

Even under the restrictive interpretation of section 541(c)(2), an ERISA pension plan trust might be excludable from the estate if it is analogous to a spendthrift trust as defined by state law. *See Goff v. Taylor (In re Goff)*, 706 F.2d 574, 580 (5th Cir. 1983). To be a tax-qualified trust under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. § 1001 *et seq.* (1975), a trust is obliged by section 401(a)(13)[2] of the Internal Revenue Code to

---

1. The report, as pertinent, reads:
 Paragraph (2) of subsection (c), however, preserves restrictions on transfer of a spendthrift trust to the extent that the restriction is enforceable under applicable nonbankruptcy law.

2. The section, in part, reads:
 A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits

provided under the plan may not be assigned or alienated. For purposes of the preceding sentence, there shall not be taken into account any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment made by any participant who is receiving benefits under the plan unless the assignment or alienation is made for purposes of defraying plan administration costs. For purposes of this paragraph a loan made to a

include a clause forbidding transfer and assignment. This clause alone, though it prevents garnishment or other state law creditor remedies, may not be enough to exclude an ERISA plan from the bankruptcy estate. However, since ERISA plans vary widely, all features of a particular plan must be examined to see if the criteria of a state law spendthrift trust exist.

█ Though spendthrift trusts are valid in Maine, *see e.g. Roberts v. Stevens*, 84 Me. 325, 24 A. 873 (1892), case law describing their characteristics is scarce. Generally speaking, a spendthrift trust is one which, by the terms of the trust or by statute, restrains the voluntary or involuntary transfer of the beneficiary's interest. *Restatement (Second) of Trusts* § 152(2) (1959). Under the common law of trusts, a spendthrift trust which names the settlor as beneficiary is invalid, and as a consequence, existing or future creditors *can* reach the settlor's interest. G. Bogert, *Law of Trusts and Trustees*, rev. 2d ed. § 223, pp. 438–439 (1979). These provisions ensure that though an individual can set up a trust to provide for the welfare of another, he cannot control his own assets to defraud his creditors.

█ In the case before this court, the ERISA trust contains the following spendthrift provision:

> *Sec. 11.02. Spendthrift Provisions.* The interest hereunder of any Participating Employee or Retired Participating Employee or Former Participating Employee or of his Beneficiaries shall not be subject to anticipation, alienation, sale, transfer, assignment, pledge, incumbrance or charge, nor shall any benefit or future benefit payable hereunder be liable for or subject to the debts, contracts, liabilities, engagements or torts of any such person, nor shall the same be subject to attachment or legal process for or against such person, and the same shall not be recognized by the Trustee or by

participant or beneficiary shall not be treated as an assignment or alienation if such loan is secured by the participant's accrued nonfor-

the Company unless otherwise required by law.

Some courts find this type of anti-alienation clause inadequate to create a state law spendthrift trust if the beneficiary of the ERISA plan has the right to deposit and withdraw some or all of the funds. The beneficiary's control over assets destroys the spendthrift characteristic. Thus, under the more restrictive interpretation of section 541, the subsection (c)(2) exclusion would not apply. *In re Berndt*, 34 B.R. 515 (Bankr.N.D.Ind.1983); *Firestone v. Metropolitan Life Insurance Company (In Re DiPiazza)*, 29 B.R. 916 (Bankr.N.D. Ill.1983).

In the trust before this court, however, the beneficiary cannot withdraw funds, deposit funds, borrow against his interest, or manage the deposits in any way. These characteristics encourage the finding that the plan creates a spendthrift trust under state law. The debtor is the beneficiary for whom a trust has been designed by the employer-settlor, who has attempted to protect the debtor from his own improvidence by retaining control over the assets. *See In re Goff, supra.* As a result of its being analogous to a state law spendthrift trust, the plan is excluded from the estate by section 541(c)(2) of the Bankruptcy Code.

The court need not reach the exemption issue.

An appropriate order will be entered.

feitable benefit and is exempt from the tax imposed by section 4975....